All rise. The United States Court of Appeal for the Federal Circuit is now open and in session. God save the United States and its powerful court. Good morning, everyone. Please be seated. For identification purposes, this panel is sitting in its capacity as the motions panel, because that is the normal room for the disposition of petitions for mandamus and light special orders. We're prepared to hear argument in the matter of Shinrei Deutsche Bank, which is designated as 2010-M920. Mr. Finn, good morning. Welcome to the court. I'll hear first from you, and be aware that when the yellow light goes on, you're beginning to consume your five minutes of reserved rebuttal time. Thank you, Your Honor. May it please the court. This case is about patent prosecution bars. While the district court held that a patent prosecution bar is appropriate in this case, recognizing that the lawyers at Respondent's law firm, the Amster Rothstein firm, who have access to petitioner's highly confidential and competitively sensitive information should be screened via a Chinese wall from prosecution, the problem is the court didn't apply that bar to one person. Respondent's lead counsel, Mr. Charles Macedo. Now, counsel, is the core of your case that the legal standard applied by first the magistrate judge and then the district judge was just incorrect as a matter of law, or is your theory that the facts were misweighed, or exactly what? It's a little unclear to me reading the petition. What category of errors? Is this fact error, legal error, mixture, discretionary misjudgment? What kind of case is this from your standpoint? Yes, Your Honor. From the petitioner's standpoint, this is a question of applying the law incorrectly. The district court looked at this court's 1984 U.S. Steele decision as its legal framework for answering the question, but it applied the case wrongly. In what respect? Well, citing to U.S. Steele, it held that the petitioners had, quote, not established that Macedo participates in the activities, pricing, product design, etc., quoting from U.S. Steele, of a competitive decision maker, and with that, denied the imposition of a patent prosecution bar on Mr. Macedo. Well, is your implicit contention that any time a lawyer with access to confidential information is prosecuting patents in the same exact technological field, that that person always has to be barred? No, Your Honor. That's not our contention. Well, what's the scope of the bar that you advocate? Yes, Your Honor. We're advocating for actually a three-part test under U.S. Steele for when a patent prosecution bar is appropriately applied to an attorney with access to the producing party's competitively sensitive information. First, we ask the Court to hold that an attorney, irrespective of his or her title, who is in a position to influence the drafting, amending, or scope of his client's patent application claims, has, first, the role of a competitive decision maker, as outlined by U.S. Steele. Second. Let me ask you a question about the first point, and that is, it seems to me that there are different activities that patent prosecutors normally engage in. There are some patent prosecutors that sort of take limited instructions from their clients. Here's a disclosure. Here's the closest prior art I'm aware of. Please go write a patent application and prosecute and pursue the claims. And there are other prosecutors that directly engage with their clients and have discussions about, you know, here's what we're trying to protect, here's the competitive environment in which we operate, and we want your recommendation as to what kind of applications we can file and how the claims should be prosecuted, etc., etc. Isn't there a distinction, and doesn't that distinction have some relevance to this subject? Well, Your Honor, there may be different roles that a different prosecution counsel may be involved with, with respect to the level of involvement, but I would submit to you that the duty of a patent prosecutor, or one involved with shaping the scope of claims, is to probe the client to understand the technology and the area of the technology and the alleged invention and to draft the broadest possible claims that are sustainable in order to cover the technology and the industry. Well, that sounds like it covers everybody who either writes the claims or their amendments or supervises such a person. Who would be left out? Your Honor, I think that an attorney who would be a conduit for information, in other words, receiving information from outside patent counsel and passing it on to his or her client without having input into the scope of the claims, that would be someone that wouldn't be covered by this and considered a competitive decision maker. I guess what the difficulty, at least I'm having, is you used just the word having an input, and before that when you were articulating the standard you used the word influencing. And those words are so vague as to be meaningless, because, I mean, a secretary, if somebody has an editor that reviews all the material, obviously they influence the drafting as well, but they have no relationship to either the decision making or the substance of what's going on. So I guess is, do you think the test that you've articulated, and I know we've cut you off at part one, so I know there's two parts remaining, but is that different than competitive decision making, which seems to be the test that people have extracted out of the USTOK? Yes, Your Honor. What we're articulating as part of this proposed three-part test is simply the analysis first to determine whether or not the attorney does influence the patent scope of the patent claims. So are you telling us we should reject the U.S. Steel test and impose a different test, at least in the context of prosecution, or are you saying this is how we're going to tease out the U.S. Steel test to be a little more detailed? That's right, Your Honor. It's the latter. We're arguing that this is merely a first threshold question to resolve, and that is before you get to the next steps, which will determine whether a prosecution bar is indeed appropriate. With this step alone, that's not sufficient for determining that a bar would be appropriate. What's the second part of the test? The second part of the test is to determine on a case-by-case basis whether the competitive decision-making attorney is in an unacceptable position to inadvertently disclose or misuse a competitor's proprietary information in a way that irreparably harms the disclosing party. So, consistent with U.S. Steel, we propose that an attorney is a competitive decision-maker faced with an unacceptable opportunity for inadvertent disclosure of a party's competitively sensitive information if the subject matter of the patent applications the attorney is involved with is the same or similar to the subject matter of the patents in suit, as that subject matter is defined by the district court. As numerous courts have recognized, it's unrealistic to expect a person to wholly compartmentalize the knowledge of defendant's secret information in his head and not let it influence his current ongoing patent prosecution activities. So, our view is that if this attorney's prosecution activities do cover the same subject matter as the patents in suit, these pending and future applications could include claims that directly cover the patent's competitor's products and systems. So, absent a showing of severe hardship to the patent holder, this attorney should be patent prosecution barred. Can I ask you to turn a little bit aside before your time runs out? And that is that, as we all recognize, we're here in the context of a mandamus. And as I'm sure you recognize, your hurdles are very high in this context. One of the considerations for a mandamus is whether there are other means in which your client could, I guess, challenge this ruling at a subsequent date. And I'm not sure I saw anyone discuss whether or not – it's hard for me, I'm not clear on the details of this litigation. Would there be another opportunity for your client to challenge this as this case proceeds? Or is this the first and last, so that you're irreparably harmed if this goes into effect now? He would be irreparably harmed. We have an interim protective order in place while the district court was determining the objections that we filed up to – from the magistrate judge. And the ruling, or the interim protective order, was to expire. And Mr. Museda was to get access to this information upon the ruling, two days after the ruling. So assuming he gets access to such information, is there a potential for an interlocutory appeal or something later on? I mean, he may get access to the information, but it's not clear when he's going to be engaged in further future prosecution. Right. Well, our position is that the moment that Mr. Museda gains access to this confidential information, the cat's out of the bag. It's too late. The information that we're deeming to be highly sensitive – Well, it's not too late if one could subsequently impose a prosecution bar. So the question is, is this the only opportunity in which your client can do that? I believe, perhaps, after the case is over on appeal, that might be an opportunity. But again, our position is that that would be too late, because while these pending applications are being prosecuted at the Patent Office now, in these months, this information could immediately be used, because there are continuation applications pending in the very same subject matter related to the patents in suit. So the horse leaves the barn, in your view, the minute Mr. Museda sees any of this confidential discovery information? Yes. Now, did you cover the third part of the test? Yes, I alluded to it. And the third part of the test is that, finally, under the Federal Rules of Civil Procedure 26C, the district court must still use its discretion to balance this normally unacceptable risk to the disclosing party from inadvertent disclosure against any hardship, prejudice, or inconvenience that would result to the party whose counsel is being barred for a limited time from involvement in the patent prosecution in the related field. So we would posit that this is an easy case for balancing this unacceptable harm versus, perhaps, a mere inconvenience to the respondent. What's the hypothetical of what would be an unacceptable risk on the other side? Your Honor, that's not for us, this case. No, that's why I used the term hypothetical. The hypothetical case would be, perhaps, a situation where the technology at issue is extremely arcane, very complex, and this lawyer was the only lawyer who was prosecuting the patents for the party at stake. Perhaps, in that narrow case, the balance of harms may come out in favor of not imposing a prosecution bar. But that, of course, is not the case. You argue in the petition that the role played by Mr. Macedo is similar to in-house counsel, even though he's with the law firm, not the client company. Is it your view that he's functioning as if he were the chief patent counsel, that he's directing all the patent prosecution activities of the client company? I don't know that I would say that we contend that he is chief patent counsel. We're taking the words of Mr. Macedo himself, saying that he's an in-house counsel. He acts as in-house counsel for these purposes. The problem with that is that we know from the Steele case that merely being in-house counsel doesn't end the analysis. So I'm trying to figure out, well, what sort of in-house counsel are you arguing he is? Your Honor, we aren't relying on the fact that he is serving as in-house counsel as the reason for why a prosecution bar is appropriate. We have numerous other factors which we've laid out in our briefing which shows what role he plays. You make a big point out of the fact that he attended some dozen or two examiner interviews. Well, what if he hadn't? Would then he be okay if he hadn't been to actual interviews? Well, I think that it's a situation where it's for the district court to measure all the factors to determine whether this person is in a position. The more factors you want the district court to measure, the harder it's going to be for you to win on mandamus. So I'm a little bit surprised that you're having a three-part test which has multiple subparts and that you're talking about a lot of balancing kind of exercises that Magistrate Judge Peck and the district judge did do a lot of balancing, and we understand you don't agree with how they came out on the balances, but you can't say that they didn't make a good faith attempt to balance conflicting factors. You're not arguing that, are you? Well, I'm arguing that the district court made a clear legal error, and that legal error was the failure to consider patent prosecution activities and affecting scope of claims as a competitive decision-making exercise. That is a legal error that I think this court could and should articulate. There is some reference in the district court's opinion to the fact that Mr. Macedo supervised the patent prosecution at Island, and I see some general references throughout the record about this, but nothing that tells me what that means. Is there anything in the record that sheds any light whatsoever on what that means, what he did as a supervisor? Did he say to Mr. Ellis, you can file three applications this month, and next month you can file four, or did he do more than that? Well, I think he did more than that. How do we know? Because of some of the statements that Mr. Macedo made, one of the statements that Mr. Macedo made was that he was going to need to tend to office actions, responding to office actions. That is clearly a situation where, one, when claims are rejected, you respond to office actions relating to the scope of patent claims. That's another factor showing his involvement. Judge Croce raised a question with you earlier that maybe we don't have enough information in this record to make a clean decision in either direction. Could you quickly summarize for us what the factual type evidence in the record for the district court was? With respect to Mr. Macedo's role? Sure. Yes, Your Honor. Well, with respect to the nature of the information that has been or will be disclosed. It was very hard for us, at least it was very hard for me, to figure out in the initial discovery disclosures of something like, I guess, 154 documents, a large portion of which were marked prosecution bar confidential level documents, but we didn't get any feel for what those documents were, whether they were properly labeled as prosecution bar documents or not. We have no idea what the future discovery scope and content may consist of. We don't have, that I could quickly find, at least the discovery order. So I'm getting a little bit of an anxious feeling here that I might not know enough to make a sensible judgment here. Well, Your Honor, with respect to the type of documents and the nature of these documents, I would submit that the district court is in the best position to determine whether or not patent prosecution bar documents would be appropriate for such a patent prosecution bar. Indeed, as I mentioned, in the record, there is an interim protective order which includes this patent prosecution bar condition. The petitioners have labeled many documents, a number of documents, as patent prosecution bar. We've actually litigated at the magistrate as late as last week, issues about the appropriateness of the petitioner's designation of some of these documents. Some of them we've agreed that would not be prosecution bar, but other documents... We don't have any understanding of the content of a single document, even the ones that are not contested as to the appropriateness of the labeling. We have no idea what they are. Are they trade secrets? Are they technological stuff? Are they about future products? Are they about how the current product works? We don't have any clue at all other than I see that they deal with software. Other than that, I have no feel for what the documents are. Your Honor, these documents are documents that relate to the technology of how the petitioner's products operate and manuals with respect to how to implement the products. Now, the patents in suit are very high-level business method patents so that the information that we have designated as patent prosecution bar correspond, which are sensitive and secret information of the petitioners, correspond to the patent claims, the scope of patent claims that are at issue in the case and at issue... Well, I guess the bottom line question, is it your position that we have all the specific factual information in the record here at this court that we need to decide this petition? Yes, Your Honor. And that a rule-in for further development of the record would definitely not be needed? That is my position, Your Honor. But let me ask you about the first part of Judge Michel's question, which went to what we have in the record with respect to Mr. Macedo's actual role in patent prosecution. Yes, Your Honor. What we have in the record is the fact that Mr. Macedo is deeply involved with the prosecution of many of the respondents' patent applications in the very technology and litigation, including... And that is a large number. We are. In Exhibit 1 and Exhibit 5. Page 6 of Petitioner's Brief. There's a bullet point listing on page 6 and 7 with references to the docket as to the activities that Mr. Macedo is involved in. Do we have an affidavit or deposition testimony of Mr. Harris, for example, of what sort of supervision he's under from Macedo? Do we have a deposition or affidavit of Macedo himself as to what his role is? No, we don't, Your Honor. And it's our position that the activities that have been described and undisputed in this case are sufficient under the proper legal standard to find that a prosecution was appropriate. Because he's involved in responding to office actions, which presumably means drafting amendments to original application claims? That's right. That's enough right there? That's the magic bullet? Well, under the facts of this case... Well, that's the only case I'm asking. There's a host of factors which point to the nature of his activities being... But if I understand your theory, you don't need anything more than the fact that he's either going to draft amendments or he's going to dictate to Mr. Harris what amendments should be drafted for some of the lineal descendant continuation applications of the patent in two. Well, I would submit that any activities, as I laid out in the first part of this test, that could influence the scope of a patent claim is fair game, is competitive decision-making as laid out in U.S. Steel. Every patent prosecutor is going to be engaged in that activity. Is that right? That's right. Every patent attorney is going to be engaged in determining the scope of claims, responding to office actions, et cetera. That's correct. So then the only other aspect of your proposed test is that the applications that are being prosecuted are related to the patent in suit. That we're submitting is the minimum condition, yes, Your Honor, and then after that the district court would still weigh the competing interests of the parties to make the final Rule 2060 decision. So you're essentially advocating a per se test. If you want to call that a per se test, I think there's a lot of tension. Well, isn't there a lot of case law that's rejected a per se test? I mean, it seems like the district courts have gone different ways, but each one of them attests to the fact that, yes, there should be and there is no per se rule. Right. I think that what U.S. Steel was saying is that there should be no per se rule based upon the title of the attorney at question, whether it has to do with access to information. But you're advocating another per se test, which anybody who has the line prosecution of patents on their residence, is that the per se test? No, Your Honor. I'm saying that that activity for determining or influencing the scope of claims is competitive decision-making, but that's not enough. So the court must first determine whether that person does those activities, whether they are involved with or influencing the scope of claims. That's one factual determination. If the person is not involved or is not influencing the scope of claims, then the question is over. That threshold is not met. Well, I'm baffled by your answer to the last two questions from my two colleagues. It's hard to imagine anybody that you could label a patent prosecutor who wouldn't fall under the bar as you articulated. So it really does boil down to a per se rule. Give us some examples of patent prosecutors who would not fall under the bar. Very well. One example would be, Your Honor, if Mr. Macedo, for example, was prosecuting patents for other clients relating to other technologies, like automobile technology. Yeah, yeah, but that's a fancy example because no one is going to care about that. That's never going to get litigated. We're talking about the cases where there are protective orders, where there's a battle, where there's a mandamus petition, and we're trying to figure out, all right, well what's the rule of law for deciding the mandamus issue? Again, Your Honor, if these two factors in the first two tests are met, A, that the person prosecuting applications is prosecuting patents influencing the claim scope in the same field related to the technology at suit, then yes, I think that we are. So how do we define the field? In this case, they're lineal descendant continuation applications of, I guess, 19 in number. So here the relationship is apparently quite close. But otherwise, how do we know whether it's the same field of technology or not? I would submit that that is a task for the district court to determine. Well, not when you bring a mandamus petition here. Now it becomes our task. Well, the court did that in this case. The court adequately, we believe, did define the scope of related technology and saying that it is financial services involving suite products. Well, aren't you at most advocating that we clarify to the district court that competitive decision-making might very well include passing prosecution and then at best using your words to define what that is, the influencing language and so forth. But at most it seems to me that maybe you're asking us to send it back then to the district court if we tease out of competitive decision-making what aspects of patent prosecution we think should be covered and not, and then sending it back to the district court for him to apply our more illuminating standard to the facts of this case. Isn't that the most you could hope for here? No, Your Honor. Our position is that the facts are sufficiently developed such that under a clarification of the standard that the conclusion is irrefutably that the prosecution bar should be implemented. So you're not relying on, as far as the legal test, you're not relying on something more than the normal patent prosecution activities, provided it's related to the subject matter of the litigation. It seems to me that, and I realize there's the hardship issue, but in terms of what you've characterized as the first two prongs, it seems to me that you're saying the legal test is Are you involved in doing patent prosecution on related applications? If so, that's enough. You don't need to show something more in order to implicate competitive decision-making. I would submit that yes, Your Honor, if involved, it means that you have sufficient involvement to influence the scope of the patent claims. But what does that mean? Who doesn't? I'm not sure what that means. I mean, that's what all patent attorneys do. So tell me where I'm wrong. Well, there are situations where a lawyer may be simply a paper pusher, may be a submitter of information, receiver of information from the prosecution counsel, and then pass it off to his counsel without input. Well, maybe the prosecutor has really no information from the client as to what the competitive environment might be or what any decisions the company's making about the direction of products, et cetera. It's just, here's the disclosure of the invention. Go prosecute and go get me some broad claims. No, Your Honor, I'll make a clarification. What I was referring to is a situation where you have a patent prosecutor and you have an intermediary who is transmitting the information to the client. I will agree that the patent prosecutor who is prosecuting these related patents would be considered a competitive decision-maker, undoubtedly. Why? What if he's on a very short lease from his clients and he's got to go back to his client for any decision-making, that he has no real independent decision-making authority? If you have no independent decision-making authority, does that mean you don't satisfy the influence test that you've articulated or not? No, Your Honor, I would submit that the very nature of a lawyer who crafts patent claims and amends patent claims does, in fact, take that role. It's never merely a pure transmitter, but always is making decisions, competitive decisions, relating to the scope of the patent. Listen, if there are patent prosecutors out there whose entire function is to be a mere conduit with no input, no influence, no legal skills, no judgments, no proposals, they shouldn't be charging rates or charges. It's hard to think of anybody that you could fairly label as a patent prosecutor who doesn't at least advise the client on the optimal scope of claims, both in the initial application and in amendments in the face of examiner rejection. I'm trying to figure out who in the broad universe of patent prosecutors doesn't get kicked out under your rule, and frankly, I can't identify anybody except the mere conduit, which is one in a thousand. So virtually all patent prosecutors are barred, period. Well, Your Honor, I would submit that the case at bar, if Mr. Macedo indeed was because the plaintiff, the respondents, don't have, for example, a substantial legal department, that Mr. Macedo could, in fact, in theory, take such a role of receiving information and passing it on to his in-house counsel. I'm sorry, to either in-house counsel or to his client. That's a possible, very feasible role that would not implicate the patent prosecution bar. Now, just one more question about the content of the documents that have been produced so far. They have source code. Source code is in the disclosure, is that right? Not yet, but it might be. Well, are you asking us to deal with a might-be situation? We're supposed to decide what he can see or not see or what he can prosecute or not prosecute based on what somebody might ask for at a future stage in this case? No, Your Honor. There have been a substantial number of documents that have been produced to date. Not source code yet, because that may be the point of contention as to whether we need to produce that information. However, there is additional information, for example, agreements which show how the product works, manuals, internal documents from my client, TBS, to its company employees as to how to implement the systems which go directly to issues relating to the claims of the patents in suit. Well, we've given you lots of extra time, and we'll give you back the reserve rebuttal time. We'll extend Mr. Macedo's time by up to 18 minutes if you need it. Thank you, Your Honor. So we have parity of time here. All right, Mr. Macedo, we'll hear from you now. Thank you, Your Honor. Good morning, Your Honor. Good morning. Welcome. Thank you. Thank you for this opportunity to address the court. I understand this is a rather unique opportunity in a mandamus petition, and so we're certainly here to— Now, I have to caution you to be careful not to testify, because we're not the district court determining facts. We're reviewing in a mandamus context on a fixed record. So you have to be very careful to give us argument only, but not description of your role that isn't explicitly in the record before us. I agree with you 100 percent, and actually the first case I was going to direct your honors to is a Second Circuit case, since this does come from the New York courts, and to the extent that mandamus is a procedural issue, this court may turn to the Second Circuit, and it's a case called Inmate Dow Corning Corporation. It's 261 F. 3rd 280, and it was decided in 2001, and it is a presidential decision. Was it in your response? No, no, no, no, no. It was not in my response. Well, why not? It's a case that's almost a decade old. Your Honor, I have to apologize. The way that this came up, the issue that occurred to us you may be raising was a factual record issue, and this case that I'm citing to you relates to what happens when a factual record is inadequate. Why don't you do this? under the rules of procedure that cite the case and make a brief argument, and the other side can respond, and we'll look at it. But we shouldn't take all the time here for you to walk us through a case that isn't in your brief and that we haven't read yet. Of course. It's just one sentence that I want to point your honor to, if that's acceptable. It says, when the record below is ambiguous, the writ of mandamus will not issue. And in that case, when we submit it, which we'll show you, the court said the district court was absolutely wrong in its application of law. The record was inadequate, but mandamus was inappropriate because it was the petitioner's burden to create a record down below. Well, what exactly do you think satisfies that here? What is the essence of the ambiguity here that would preclude us from going forward? Well, what I'm trying to address was the series of questions you just raised, where the court appeared to be suggesting that they thought the record inadequately established facts. Well, do you think that's the case? I think that the record is devoid of some very important facts. I think the most important fact it's devoid of is actual harm to defendants or petitioners. I think the record is devoid also of facts which establish Well, in the court's order, he says the designation of confidential may be applied to a party to information of the type that's been included, blah, blah, blah, which it believes in good faith to constitute confidential or trade secret information. The disclosure of which to a person engaged or otherwise assisting in patent prosecution, blah, blah, blah, relates would create a substantial risk of injury to the supposing party. Do you have any problem with that standard? Well, in application, yes, there's been a problem with that standard. There have been hundreds of documents that have been designated by the petitioners as prosecution bar. We have challenged the ones that we've needed to use in this case, and virtually every challenge has resulted in Okay, but that's the district court, I'm sure, is adept, experienced, and will handle every one of those challenges. I'm not sure how that in effect necessarily makes it impossible for us to decide the narrow issue before us, which is the attorney's participation. It is a requirement under Rule 26 for protective order that the moving party petitioner show good cause. And what we've seen in our experience under the interim protective order is that they haven't shown good cause if they have the type of documents which require the type of protection that they're seeking. But then you won't be harmed at all. Well, no, I am harmed because it's obstructed our ability to proceed with the case. It has precluded me as lead trial counsel from reviewing the documents. Well, that's a different issue, though. Ultimately, we have to assume that the district court is going to rule on that, straighten things out, and then at the end of the day, there are no documents that deserve a patent prosecution bar. Then it doesn't matter what we do here in terms of your situation because you're going to be able to participate. Well, it's a burden shifting here. It's a burden shifting in the sense that the district court went through. It went to see if there was good cause for the type of relief they've asked for and found there wasn't. Magistrate Peck held a hearing, found it wasn't there. Magistrate Peck reconsidered our motion for reconsideration, again found good cause wasn't shown. It was objected to, Judge Marrero, and there was no good cause shown there. Are you suggesting that this appeal is premature because we've not had any documents that are necessarily absolutely designated the type of documents that would be at issue here in the prosecution bar? Well, I suggest there's problems with the mandamus petition, not because it's premature, but because there's no support for it. I have a different view of that. Well, let's assume three weeks from now, if we decide against them, it turns out, yes, indeed, you're asking for documents that everybody would indisputably believe have these trade secrets. Then does somebody have to come back? Well, if they make a showing for good cause, why are we to believe that the district court wouldn't take that showing and protect them? So far, the district court has acted very responsibly at every step of the way. We have regular conferences with Magistrate Judge Pak. We see him once a month. He's carefully analyzing this case. He carefully adopted a protective order, which allowed for their concern of inadvertent disclosure by not allowing my colleagues here to be involved in patent prosecution. But are you suggesting the district court, if certain documents come up, the district court is going to read them? It's my understanding that the district court, even though he stayed at pending this appeal, the district court is going to allow you to see any documents that include trade secrets, prosecution bar, everything. Am I wrong about that, or has that decision not been made? As of right now, if Mandamus were denied, the order that is in effect is that they have not made good cause, and that I can see whatever they're producing. And still prosecute the lineal pet. And still supervise the prosecution by Mr. Ellis at the Foley Law. Would they have any other, I mean, part of the test of Mandamus that I asked your colleague about, is there any other means for them to challenge then your access to these documents? Sure, I'll give you several. One, if they have a document which they think we don't need to see, and they want to withhold, we don't want to ask for documents that are sufficient to prove our case. We're not asking for every document in the sun. We're not asking for future development. Sure, there are going to be a thousand fights on discovery. Of course there are, in every case. They can, first of all, approach my colleague, Mr. Charcow, and Mr. LoCicero, like we've done in the past, and say, listen, we have these documents. We think that these are prosecution board documents. We don't think they're necessary. You're calling for them. We'd like for them not to be here. So one, they can ask us. And we've worked with them in the past. In fact, in the transcript of the hearing last week, we're going to be doing this. But the legal remedy, Judge, first question is, what legal remedy do they have, or is this their one shot? Right. So to say that lawyers can negotiate among themselves, that's not a legal remedy. That's not a responsive answer. Okay. The second remedy is, if they do have specific material which they need to produce, and they have a real harm associated with it, they can ask the court. To reconsider. Not to reconsider, or to say, Your Honor, we have new evidence. We have new documents. There's a new issue that's been raised. We would like to have it. But it's not a new issue. They come up with a document that they consider highly confidential. Right. Can they go back to the district court, assuming we deny this petition, and say, Look, we've got this really confidential document. We think you ought to not let Mr. Macedo see it because he's engaged in prosecution. Is that opening available to them? I don't see why it wouldn't be. I don't think that the case would be very good. If you were the district court, wouldn't you say, Been there, done that. I've already heard that issue and ruled on it. You've taken it up to the federal circuit. They've denied your writ. This is just going over old ground. The fact that the remedy may be a denial doesn't mean that the remedy isn't available. There is a procedure available. People can move to modify protective orders.  They have to show good cause. And there's a very high standard. I wouldn't argue with that. But that procedure is available. But essentially, it's de facto reconsideration. I mean, if you're modifying a protective order that you've already argued about concerning the same issue, which is whether or not prosecutors ought to be involved, don't you think it's really a reconsideration? It may be. Whether it's called a motion for reconsideration or whether it's called a request for modification of a protective order, the law allows for that. The procedure exists. Can I just move on to this? We spent the bulk of our time discussing what the right test ought to be, and you heard your colleague talk about how we're going to keep competitive decision-making. We're just going to tease out what that is. Do you think someone who makes absolute final decisions of everything that's going to happen in prosecution, in terms of amendments and so forth, do you think there's any basis? Do you think there's any basis in which we would apply the bar to that person? I mean, you've applied the bar to your colleagues. Yes. So there are circumstances in which a bar is appropriate. Can you just kind of outline for me what those circumstances are? What makes one prosecutor, one type of prosecutor, subject to a bar and another not? Well, I think that this comes down to the same test that was set forth in the U.S. Steel as well as in the McChrystal case. And in the end, it's going to come down to a balancing. With respect to my colleagues here, the reason why a prosecution bar is not objectionable, and I reword it like that because we didn't object to it, is because there's no harm. Because they're not prosecuted. They're irrelevant. You're the only one who's an issue here. I prosecute. So tell me, under any circumstances, do you think the situation where someone is prosecuting and litigating, and let's assume they're related patents, whether it would be appropriate for a bar to be involved? Well, that's sort of what has spawned this whole debate that we've gone through. With litigation counsel, there's longstanding prosecution counsel, right? Not litigation counsel. We need litigation counsel from a different firm, never involved with prosecution. They come on to the litigation, and either litigation counsel suddenly becomes additional prosecution counsel, or prosecution counsel suddenly becomes additional litigation counsel, for the sole purpose of stealing the defendant's information to put into the prosecution. Is that fair? Sure. But what we're talking about here is a very different circumstance. And, for example, in the trading technology cases, which is one of the cases that is in our brief, there they recognize the fact that the lead litigation counsel had been a long time involved in prosecution, supervising it, did not mean that he should no longer be involved. This is not a question of adverting disclosure. This is a question of assessed inadvertent disclosure. And in U.S. Steel, Chief Judge Markey, writing the opinion, recognized the harms of inadvertent disclosure. He likened it to a piece of the knife. That is something which is not suggesting that it isn't considered. But yet, inadvertent disclosure by itself was not sufficient harm to justify the per se rule that was advocated by the ITC in that case. But the rule that they came up with was competitive decision-making, right, including pricing. So it seems to me that court does sort of create a per se rule. Anyone involved in pricing is then not allowed to see the trade secrets, right? No, that's the first half of the test. The second half is then you weigh the prejudice versus the benefit. So that's what happens here. And that's the discretionary part, which even— So you think they've satisfied the first part of the test. It doesn't matter if they've satisfied it because they lose the second half. First of all, in terms of the first part of the test— And the second half, again, is— Is the balancing. The prejudice to my client by not allowing me to wear what the magistrate called two hats is much greater than the risk to their client of me stealing their stuff. Why is the prejudice much greater when Foley and Larner is available to prosecute these applications if you can't? Foley and Larner is prosecuting patents whether I'm involved or not. My job is to supervise according to the record, okay? Foley and Larner has one lawyer there who I've been working with since 2003, according to the record, okay? The client does not have someone that is a patent prosecutor that's been involved with this prosecution, which is highly complex, involving highly complex technology, going on for years. They've had to switch patent counsel multiple times prior to Foley and Larner being detained. It is a very complex and difficult process. Does the record define what supervising means? I don't think so. Is your argument essentially that you're uniquely able to supervise and no one else could, and therefore severe harm to the client's interest if you're blocked from further prosecution of these descendant patents? I think that that's not only my argument. I think that's what was found. In fact, when you look at Judge Marrero's decision, he called me having a vital role based upon the defendant petitioner's arguments. But if Mr. Ellis is doing the actual prosecution and your role is to supervise, the vital nature of that role, it seems to me, is because of some input you're providing to Mr. Ellis about the direction of prosecution or something of that sort that, to me, starts to sound like it has some competitive overtones. What I would say is that I don't know what supervision means if it doesn't mean some influence on what kind of protection the client needs under the circumstances. What I would say is that I have an admonition by Chief Judge Michel not to testify here, so I don't want to do that. I would say that your inference is a reasonable inference that you could draw from the record, though, and I would not dispute that inference for purposes of this appeal. However, even assuming that you were to say that the district court recognized that patent prosecution bars are appropriate in some circumstances but not required when one party simply asserts that opposing parties prosecute patents involving the same technology issued in the lawsuit. That's the theory by which they advocated I should be barred. That's the theory by which the principle of law. This is a mandamus petition. It's a mandamus petition to a district court reviewing a magistrate judge's decision on the highly discretionary issue of whether or not to enter into a protective order on reconsideration. There was a hearing held. The judge reached a decision. No appeal was taken from that. Instead, a motion for reconsideration was filed. On the motion for reconsideration, the magistrate judge adhered to the petition. On appeal from the magistrate judge to the court, the court said there was no clear error. They pointed to no controlling legal precedent, which is contrary to what was relied upon by the district court, either at the magistrate level or at the court of appeals level. They advocate a new rule that this court has never yet before announced, nor have they pointed to any other court of appeals that has announced that rule. Speaking of our precedent, let me ask you this question. In the briefing, a great deal was made, in my thought, over the concept that he who's to be barred has to be a decision-maker. And there is some language in the Steele case by Chief Judge Markey about decision-makers. But there's also some language in there about those who advise decision-makers. So even if, in this case, the client or some officer of the client company is going to make the final decision on claim scope, isn't it clear from the record that you at least advise on what claim scope should be sought? I don't know how to answer that because, again, I'm trying to stay within your admonition not to testify. I think that what the record reflects is that I attended interviews and that I supervised Mr. Ellis, and I don't want to be testifying because I don't think that's appropriate as you're under-directed. Let me ask you the legal part of the question. Do you agree with me that, properly read, the Steele case doesn't require that the barred person be a decision-maker, much less a decision-maker on competitive matters? But a barred person could also include somebody who advises competitive decision-makers. I think, potentially, yes. I think what you have to do is go back and consider how the U.S. Steele case came up, which, by the way, was not a mandamus case. It was an interlocutory certified appeal, which could have been done here as another alternative revenue. It wasn't, just to point out. It was directed towards the fact that the CIT had this mandatory rule saying that in-house counsel couldn't see stuff. And this court recognized that you can't have that type of per se rule, that you don't want to knock out classes of people because they're in classes of people. The rule that's being advocated, I think, was recognized down below, and I think has been clearly indicated to the extent that anything was clear in the last argument, to be a per se prohibition against anyone doing prosecution and litigating. I think, personally, for society, that's a bad idea, because what you're trying to do is you're trying to take people that are knowledgeable and remove them from advising the court and show them if they can help. But the problem is that our system of discovery is extremely broad and extremely deep, and all sorts of extraordinarily sensitive information, including overt trade secrets and other things, is subject to discovery under various restrictions and restraints. So if we were in England, which has a very different discovery system, or in Germany, which has essentially none, this problem wouldn't come up. This is peculiar because of the extent to which parties in civil litigation in the United States are required, under pain of contempt, to produce documents that ordinarily they would never let out the door. So this seems to me to create a need for some balancing. Your argument is strong in a vacuum that lawyers shouldn't be restricted from helping their clients wearing any hat they are able to wear. I think that's a fair point. But the trouble is, when you set that in the context of disclosure of trade secrets, now there's a problem, unless the courts are wrong in saying that there's a significant risk of inadvertent disclosure of the secrets. I think that I would address that two ways. I think that you're addressing an abstract, which isn't this case. In this case, there were two defendants. There was the promontory set of defendants and the Deutsche Bank set of defendants. They both were arguing this motion. When it got to Judge Marrero at the district court level, the promontory defendants put in the declaration, albeit insufficient in our view, to say, here's our confidential stuff, we spent lots of money on it, it's really important, we really need protection. They didn't. Is that because Sidney and Austin doesn't know how to do a declaration? No, it's because they can't. I would argue that's because they couldn't put forth that. And when they've been challenged on what they've put forth, they either withdrew it voluntarily or by the court saying that's not good enough. So I don't think that they've ever even met the burden of being entitled to a protective order in the first place. Then the second step is, what's the harm? The harm is real and dramatic to my client. The harm of not allowing lead litigation counsel to see the documents necessary for the proof. What's resulted? What's resulted is that all of the dates have been pushed back. And even as the dates have been pushed back, the interim prosecution bar has acted as an obstruction to the order of the prosecution. Of course, in fairness to the regime that was instituted in the court below, you aren't barred from litigation or prosecution. You are only required to make a choice between one and the other. I think that your Honor called that a Hobson's choice and Duquan decision. Well, it may be necessary to have a Hobson's choice if the courts are right that the risk of inadvertent disclosure is substantial. If there's no risk of inadvertent disclosure, then it seems quite clear that the interest should free the lawyer to serve his client in any number of roles. Okay, let's say that the issue is the risk of inadvertent disclosure and whether it's substantial versus the prejudice to the other side of not allowing them to do what they've done. That's a discretionary decision, and the discretion lies within the district court in the first instance, Magistrate Judge Peck, and on review, whether he views that discretion with the Judge Marrero. Up on appeal here, if it's a discretionary decision, I can cite some numerous decisions where this court, including ones authored by each one of you, has said when it's an issue of discretion, mandamus is not appropriate. So what it all comes down to is, and that's the question, right, did the judge abuse his discretion? And it was in weighing the factors, which they recognized in the end needed to be weighed. You don't know where it is, it has to be weighed. In step three, they seem to recognize that there was a balancing test based on specific facts. Right, and those balancing tests were done, and there's not a single fact that they've identified that was not considered, at least in kind, by both Magistrate Judge Peck and Judge Marrero. There's no overlooked facts, there's no controlling precedent. This is a review of a decision which was highly discretionary, and by the way, it's not that the protective order didn't carefully craft and consider their concerns, there was a prosecution bar put into effect, there was protection, and it was a violation. But you agree that the prosecution bar is meaningless because your colleagues don't prosecute, so the fact that they're barred from prosecuting as well as litigating is inconsequential. Well, it's still inconvenient. But none of them are normally prosecuted, isn't it? No, but they could have been held in the prosecution. This is a complex case where there's a lot of facts. And the other thing to keep in mind, which doesn't really come out in this record, is that there have been repeated accusations of inequitable conduct. There have been multiple letters written by their previously settling co-defendant that said you have to consider this prior art, you must go do this. There were patent applications that were pulled three times. And then they accuse us, when we submit the stuff, of committing inequitable conduct. It requires careful monitoring. It requires careful thought. It's a complex case. You mean the ongoing prosecution? The ongoing prosecution. It requires very careful monitoring. There's very serious allegations that have been made here. Concerning the patents in suit? Concerning the patents in suit, as well as the ongoing prosecution. They have argued for infectious inequitable conduct based upon ongoing prosecution and alleged inequitable conduct that has occurred during that time, even after the complaint was filed. Isn't that all counsel for your not being wearing two hats in this circumstance? According to them, I couldn't do that. You couldn't do what? I couldn't supervise Mr. Ellis to make sure he didn't commit inequitable conduct. And still litigate. And still litigate. That's a horrible thing. In fact, if you look at paragraph 32, at their insistence they put in there that I would not have a duty to inform Mr. Ellis of prior art that I learned in the litigation should I elect to be involved in the litigation looking at the prosecution bar instead of supervising the prosecution. Is that a favorable outcome? That you don't disclose to the patent office prior art that they disclosed in the litigation about related subject matter? But if in this litigation, there's an issue with respect to what prosecutors are doing in the context of inequitable conduct. Isn't there the potential for you to become a fact witness? That's not an issue that's been raised. And it's not one that's the subject of this mandamus petition. And it's not a basis for this. And they asked, are you moving to disqualify Mr. Macedo? And the answer was no. I am lead litigation counsel. That is the record. It is unequivocal. And uncontested. And uncontested. And not challenged as to whether or not I should play that role. And the only harm that's been alleged is the risk of inadvertent disclosure, which can be, but is not necessarily enough, to preclude access. And I think that was very clearly written in U.S. Steel and in Michusta. Anything further? Not unless you have any questions, Your Honor. Apparently not. Thank you, sir. Thank you. Mr. Finn, you've got up to five minutes for rebuttal. No need to repeat anything said in your initial argument. But anything that you didn't already cover that was raised for the first time by Mr. Macedo is certainly fair game. Your Honor, Mr. Macedo is claiming that we're advocating for a per se rule that was admonished against in the U.S. Steel case. And I just want to be clear that we are not advocating for the per se rule that it was admonished against. Well, it's a linguistic quibble. He says in practical effect it's a per se rule. On its face it's not. So, okay, we understand. With respect to Mr. Macedo focuses on the balancing of the harms and says that the harm is great. We challenge that on the record. We believe that the harm is, if anything, it's a mere inconvenience for respondents to have the temporarily and the narrowly defined prosecution bar for a limited amount of time. Wasn't there a finding below that it would be a substantial inconvenience or words to that effect? I mean, you may have challenged it, but the fact you challenged it isn't what's important to us. What's important to us is if it's a finding, we have to follow it unless it's grotesquely, obviously backwards. Right. Well, we believe that any substantial inconvenience to the extent there was is clearly outweighed by the risk. But, again, there's a finding that in the way you come up here, right? Well, no, we don't because it harkens back to the fact that the legal standard that was articulated was incorrect. So what we – Show me exactly what words reveal the incorrect understanding by the tribune below of the applicable legal standard. I read the opinion fairly carefully, and you can quibble, but I didn't really see a false statement of the standard. Yes, Your Honor. In Judge Barrero's opinion, I would have the court turn to – Which exhibit are we in? We're in Exhibit 1. Exhibit 1. Okay, pages. Yes. First, page 3. Bottom of page 3. Judge Barrero states at the last paragraph of page 3. First, the Federal Circuit has also found that per se bars based on an attorney's general area of practice are not appropriate. That's not what U.S. Steel said. U.S. Steel said that per se bars based on an attorney's title are inappropriate. Well, okay. So you're quibbling that title doesn't correlate to area of practice. Well, maybe it does, maybe it doesn't. That's an important statement. Maybe it usually does. Because I think U.S. Steel – I don't think that that shows that this judge seriously misunderstood our Steel case. Right. Your Honor, the second passage that I'd point you to is page 5, line 4. As the basis for finding, Your Honor, that the Deutsche Bank has not met its burden, it says, the court, however, finds that Deutsche Bank has not established that Macedo participates in the activities, pricing, product design, etc., of a competitive decision maker. We submit that the statement that pricing, product design, etc. in the footnote of U.S. Steel were mere examples of what would qualify for competitive decision making. That's not an inclusive list of activities. And what we're asking this court to do today here is to declare that the activity of influencing patent prosecution claim scope is indeed no less competitive than either pricing or product design. We believe that it was too narrow – Always? Patent prosecution claim scope amendments always constitute competitive decision making because they alter the scope of application claims? Again, in the abstract, yes. That is the first step that we urge the court to adopt. That patent prosecution claim scope is always a competitive decision making activity. And then we move forward with the next two steps. So, Your Honor, I would – Wait a minute. The question was, what sentences in Judge Morello's opinion show that he misunderstood our case law? So you put us on page 3 and now on page 5. What is it about the sentence you just quoted that is a misdescription of our U.S. Steel case? adopting the statement in this case. Do you assume that what he meant by this was that the only two categories of activity that can fall under competitive decision making are pricing and product design? I would read this that he comes very close to that. He doesn't explicitly state that, but he comes close to that position. I'm having a hard time following how this is a misstatement of the law. And when I ask you how is it a misstatement of the law, your response seems to be, well, he misapplied it to the facts of this case. That's a different matter. That's a very different issue. It's one thing for a judge at the trial level to misunderstand appellate law and just have the yardstick wrong. You know, he has the yardstick that's two feet long instead of 36 inches. But what I hear you saying is, no, he has the right yardstick, but when he measured the facts, he just didn't measure carefully. That's a very different thing. I'd agree with that, Your Honor. Because the first is no deference is required. If we think he misunderstood and or misstated the law, he gets no deference. But in the application of the law to the facts of record, he gets a lot of deference. He gets almost triple deference, because he gets mandamus level of deference plus abuse of discretion and underlying fact-finding. Your Honor, so for a point of clarification, yes, I would say that what we're advocating is that he got the law wrong. The prosecution, Barbara Brooks... In what way? I mean, this goes back to what Judge Poynter said. Do you think, do you really maintain that the judge thought that only those people who decide pricing for product design qualify as competitive decision-makers? Do you think that's what he thought? I don't think that he is per se limiting himself to that. However, I do think that it's clear from the record that the judge did believe that patent prosecution activity and affecting the claim scope is not competitive decision-making. Ever? At least on the facts of this case. Okay. The prosecution bar, Your Honors, proposed in this case is narrowly defined in time and in scope, and in terms of... It's narrowly defined of cases that were disposed of fast, but this case looks like it's on the five to ten year timeline to me before we have a final judgment. If it's ten years plus one trailer year, that's eleven years. That's not an inconsequential time for Macedo to be off limits at the PTO for this client's ongoing prosecutions. That may be the case, Your Honor, but it's necessary to prevent the unnecessary risk of disclosure that a protected order can't protect. Respondents have made its own bed by engaging the same attorney as its lead counsel for its patent enforcement campaign in the federal courts as for supervising, quote-unquote, patent prosecution portfolio. They knew or should have known that there was a risk that the courts would see the steel roll as too big of a risk for the defendants they sued. What about the circumstance, and maybe Mr. Macedo fits this mold and maybe doesn't, I don't know. But what about the circumstance where the technology and the related law are so arcane that there's only one guy who understands the technology well enough to be able to litigate the case, and that same guy is also the only guy who understands the technology well enough to be able to ably prosecute the case? If you have somebody with that sort of uniqueness, I take it that he gets out of the bar under Part 3 of your test, right? I would agree with that, yes. You just say Macedo isn't such a person. Macedo isn't such a person. How do we know? I think the record. What in the record? Show us what page we look at. Is there some affidavit, some deposition, some something concrete, evidentiary material that we can look at to see that there are 50 guys who could do it, he's not unique at all? I don't know. Your Honor, we did not take the deposition on Mr. Macedo. We didn't have the opportunity to take the deposition on Mr. Macedo. But I would say that there are omissions that Mr. Macedo made that were not rebutted in the respondent's brief that show his substantial involvement. No, no, no. I have a point about involvement. I completely agree with you. His substantial involvement is beyond dispute when he goes to examiner interviews and he supervises Ellis, et cetera, et cetera. But that's not the question. The question is, does he have unique knowledge that would make him maybe the only person the client could have confidence in, both on the litigation side and the prosecution side? You say no, and I say, well, where's the proof he doesn't? And then change subjects. Right, right. Your Honor, I would submit that that would be the burden on the respondent to show that he indeed is that person who has that unique role. I would submit to you that this case and the facts of this case, the patents at issue are not complex. They're high-level business method patents. Contrary to the assertion of Mr. Macedo that there is this complex patent prosecution,